UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | Criminal No. 09-10243-MLW |
| RYAN HARRIS | ) ) ) | |

**GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION IN LIMINE re TCNiSO FORUM**

The government submits this memorandum in opposition to the defendant's motion in limine to exclude TCNiSO forum posts.

### I.   Posts Are Relevant To Proving Harris's Knowledge and Intent

As set forth in more detail in the Government's Memorandum In Support of Its Motions in Limine, the government intends to introduce a number of posts that purchasers made on Harris's website, seeking to trade or acquire MAC addresses/configuration files, stating that they are stealing or uncapping, and stating that they are trying to avoid detection. The defendant argues that these posts have no probative value as to Harris's knowledge and intent, "shed no light on the relevant issues," and "that whether users obtained or could obtain free or faster service is not an issue in this trial." (Def's Memo p. 7).

These arguments are not persuasive. Statements posted on Harris's website by Harris's own customers about their stealing, uncapping, MAC trading, and attempts to avoid getting caught, are relevant to show Harris's knowledge and intent. The GoDaddy records the government will introduce show that Harris controlled the TCNiSO website (Ex. 31), the forum indices show Harris (DerEngel) as a forum moderator (Ex. 3), Harris

1

posted on the forums himself (Ex. 22, 24), and Craig Phillips and Isabella Lindquist will testify that they regularly discussed the forums with Harris.  It is therefore reasonable to infer that Harris read the posts on the forums.  To the extent that Harris's defense is, in part, that he did not know how others were using his products, the fact that other people are at least posting that they are stealing service and uncapping is quite relevant to rebut this defense.  Furthermore, these purchasers were not anonymous to Harris, because their true names and addresses were in TCNiSO's customer records.

In any case, all of the defendants' arguments go to the weight, not the admissibility, of the evidence, and any prejudicial effect is minimal and is far outweighed by the highly probative value of these statements.

**II.    Posts About Swapping MAC Addresses/Configuration Files Are Not Hearsay**

As set forth in its Memorandum of Law In Support of Its Motions in Limine, the government intends to introduce a series of forum posts by users seeking to trade, provide, or obtain MAC addresses and/or configuration files from other users.  These are not "statements" within the meaning of the hearsay rule; they have no "truth" or "falsity" associated with them.  They are requests or questions, and as such, they are verbal acts and not hearsay under Fed. R. Evid. 801(c).  Courts have held that a request for assistance is not hearsay.  See United States v. Hicks, 848 F.2d 1 (1st Cir. 1988) (holding that declarant's statement "I need your help in stopping the Proko plan" was a verbal act and therefore not hearsay).  Likewise, courts have held that a statement asking someone to sell something is a verbal act and not hearsay.  United States v. Roach, 164 F.3d 403, 410 (8th Cir. 1998) (holding that declarant's statement that she was asked to sell drugs involved a verbal act).  These posts, therefore, fall outside the hearsay rule.

### III.   Harris's "Statutory Immunity"/Protected Speech Argument Does Not Work

Harris claims that the posts "are statutorily protected speech" and tries to contort provisions in the Communications Decency Act ("CDA"), 47 U.S.C. § 230, into some type of novel evidentiary exclusionary rule.  He cites no authority for this evidentiary rule.  Whether the posts might have some type of first amendment protection is irrelevant to the question of whether they are admissible under the Federal Rules of Evidence.  Likewise, whether the CDA might protect Harris from some type of civil tort suit is not germane to this evidentiary question.  Nor does the case he cites, Universal Communications System, Inc. v. Lycos, Inc., 478 F.3d 413 (1st Cir. 2007), help him.  As the Court in Universal noted, the CDA addresses statutory limits on imposing intermediary civil tort liability on a provider of an interactive service as a "publisher."  The CDA has no bearing on whether posts on Harris's websites are admissible at trial to help establish his knowledge and intent about how his users were using his products.

The defendant's arguments about whether Harris was aware of the posts' content goes to weight, not admissibility.  As noted above, the government intends to prove through Lindquist, Phillips, and documentary evidence that Harris monitored the forums.  The defendant is free to argue that this evidence is not persuasive.

### IV.   Posts by Purchasers Fall Within the Co-Conspirator Exception

The defendant argues that the government cannot establish that the proffered statements were made during and in furtherance of a conspiracy.  These arguments lack merit.

The government intends to prove that Harris conspired with Lindquist and Phillips and others to help their customers steal free and faster internet service.  Whether,

3

at trial, the government ultimately proves a single hub-and-spokes conspiracy or multiple conspiracies between Harris and his cadre of insiders and quasi-insiders and their customers, either theory supports the admission of these posts as co-conspirator statements.  The government is not relying "exclusively on" the declarants' statements to prove that the purchasers were co-conspirators; rather, the government intends to introduce "some extrinsic proof" to establish the conspiracy.  United States v. Sepulveda, 15 F.3d 1161, 1182 (1st Cir. 1993).  For example, if the Court were to conduct a Petrozziello hearing, the government would rely on business records and the testimony of SA Russell and Ryan to establish that each of the posters was a paid purchaser and several were TCNiSO "members."

The defendant cites no authority for his contention that the government must prove that Harris knew the posters' actual identities for their posts to be admissible.  Indeed, the law makes clear that co-conspirators do not need to meet, communicate with, or even know the name of one another.  First Cir. Pattern Jury Instr. (Criminal) 4.03 (1998) (the government need not prove that the defendant "knew every other co-conspirator").  See also United States v. Mena-Robles, 4 F.3d 1026, 1033 (1st Cir. 1993).  Furthermore, as noted above, the true names of these purchasers were in TCNiSO's customer records.

**V.    Posts Admissible to Show Effect on Reader**

Even if the Court were to conclude that the posts are neither verbal acts nor co-conspirator statements, they are nonetheless admissible to show their effect on Harris. Statements posted on Harris's website by Harris's own customers about their stealing, uncapping, MAC trading, and attempts to avoid getting caught -- whether or not these

statements are true -- are relevant to show that Harris was at least aware of what his customers were saying that they were doing with his products.

        Respectfully submitted,

        CARMEN M. ORTIZ
        United States Attorney

By:   */s/ Adam Bookbinder*
      Adam J. Bookbinder
      Assistant U.S. Attorney
      Mona Sedky
      DOJ Trial Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

        */s/ Adam Bookbinder*

Dated: February 5, 2012